The next case on the docket is 525-0514, People v. Avion Smith. The appellant is represented by Valerie Aspen for Bryan. Welcome back. Come on up when you're ready. Good morning, your honors, counsel, and may it please the court. My name is Valerie Osment O'Brien, and I represent the state in this matter, the People of the State of Illinois v. Avion T. Smith. For purposes of clarification in this case, because the victim and the defendant have the same last name, I will refer to the defendant as the defendant and the victim as Smith, just so that that is clear for the record. Thank you for the clarification. You're welcome. The state's argument is fairly straightforward in this matter. The state believes that the trial court's post-conviction order granting the defendant a new trial for aggravated battery with a firearm and aggravated discharge of a firearm following a third-stage evidentiary hearing on the merits was manifestly erroneous because the victim's recantation of his identification of the defendant as the person who shot him was not of such conclusive character that it would probably change the result on retrial. Because at trial, there were three other identifications of the defendant. And therefore, the trial court's order was manifestly erroneous. This case stems from an incident that occurred on April 23, 2014, where the victim, which his name is Jameel Smith, and Hannibal Johnson, left Smith's home and were headed to Smith's car. At trial, Smith testified that three males approached him and Johnson while they were headed to the car, and one of the three was the defendant, who Smith knew, as well as a Darian Lucas. While the three men were speaking with Johnson, inquiring about marijuana near a curb, Smith was standing by a tree, not involved in the conversation. Then Smith turned around, heard a boom, and was shot in the chest. He heard three more shots and ran. As he ran, he was shot in the back of his right leg. He ran to the home of a family friend and unsuccessfully tried to jump through the window, so he asked for the friend to call paramedics. Smith testified that he was shot four times, including once in the chest, once in the stomach, once in the back of the leg, and he was told that he was in a coma for three weeks. He also suffered a stroke, had to have a quarter of his lung removed, and his intestines repaired. So, accordingly, he was in the hospital for about a month after waking up from his coma to recover. When Smith was released, a detective picked him up and spoke with him. The detective took pictures of Smith's injuries and presented him with a photo array of six photographs of different people, asking him to pick the one out who shot him. Smith picked the defendant out of the photo array and identified the defendant in court at trial as the person who he selected that had shot him. Initially, Hannibal Johnson told the police that he did not get a good look at anyone's face that night and that he never saw a gun, but Johnson did not tell them who shot Smith because he was scared of retaliation. However, when Johnson spoke with detectives six days later, he provided them with the name of the defendant and ID'd the defendant as the shooter in a photo array, as well as in court at trial. Now, that's the testimony at trial? Yes, Your Honor. Not at the post-conviction hearing? Correct. Okay. Jeremiah DeNeal testified that on the night of the shooting, he, Darian Lucas, Jalen Beard, and the defendant were on their way to someone's home when Smith stopped them to talk, and while they were talking, the defendant shot the victim in the chest. DeNeal testified that he saw the gun go off and ran. While he was running, he was stopped by a police officer and showed the officer where the shooting was. At the time, DeNeal did not tell officers what he had seen, but he spoke with detectives again sometime later, and DeNeal told them that the defendant shot Smith. He ID'd the defendant in a photo array, and he also ID'd the defendant in court at trial. Also, Darian Lucas testified that he, DeNeal, Beard, and the defendant encountered Johnson and Smith while they were walking around, and when he began speaking with Johnson about their plans for the night, shots were fired. Lucas testified that he did not see who fired the shots because he was running, but he heard around six or seven shots fired. Lucas testified that the streetlights were on at the time of the shooting, and that the group was directly under a streetlight prior to the shooting, and he spoke with the detective a couple of days after the shooting, and he testified that he did not tell Detective Scott DeMilano, I think that's how you say it, DeMilano, I'm sure, that he heard a gunshot, turned around, and saw the defendant shooting a small pink gun at Smith. He also denied telling the detective that he did not know why the defendant shot the victim, and Lucas did testify that he was asked to identify three people he was walking with that night because detectives already knew who the shooter was, and that he identified the defendant as the shooter because, I quote, the only one that could have been possible of the shooting was the defendant. However, that same detective testified that he and another detective spoke with Lucas, and that Lucas did tell him that when the two groups of men encountered each other, they began talking, he heard one gunshot, and when he turned around, he saw the defendant shooting Smith with a pink handgun, and that he did not know why the defendant would shoot the victim. So Lucas testified that he did not see the shooter. Yes, initially. Let's see, did he change his mind? No, Your Honor. At trial, we testified that he did not tell a detective that when the detective was questioning him shortly after the shooting, but the detective testified that he did tell him that. He changed his story at trial. But on retrial, do you think the testimony of the detective as to what Lucas told him is admissible? Yes. Why? Well, for starters, it was testified to at the first trial, subject to cross-examination, that's us. So what? We're now at a new trial. So what will the detective be able to say about Lucas? It's hearsay. Yes, however, Lucas identified the defendant in a photo array, and he signed it. So that would be— Okay, so that would be admissible. Yes. And now we—Lucas is going to deny that? Yeah, well, Lucas did initially identify the defendant as the shooter to police, and then later changed his story. And the detective would have no reason to lie at trial or on a retrial. So what someone told him that happened, that's what we trust police officers to do, is investigate crimes and then testify to them at trial. I understand. But what I'm trying to figure out is why this trial court allowed a new trial because of the evidence that would—the evidence that there wasn't sufficient evidence to convict him. That is my question as well. But when I look at what is admissible versus what is not admissible, then I wonder whether these police officers can testify as to what others told them unless the individual testifies and identifies the defendant as the shooter. Well, in this case, in the—I think it was the third successive post-conviction petition. It went up and down, up and down. I think that's where we're at now. The defendant included affidavits, including one from Lucas, who recanted his original statement. I know that's why I'm asking you about that. Regardless of what, like, Lucas is denying now, there were three other eyewitnesses who all testified that the defendant was the one who shot Smith. So there was ample— Smith doesn't say he got shot by the defendant. He did initially. I understand, but all of his testimony has now changed. So the state can't impeach its own witness. So if they called Smith, for example, if the state called Smith and Smith says, I don't know who shot me, the state can't impeach its own witness while you identified him before. So I'm wondering if the court took that into consideration when it was talking—when it decided to grant a new trial on this. Is it only looked at what was going on in front of it and not what the impact of the subsequent trial would look like? So I'm not sure what the trial court judge or the post-conviction court judge was thinking when it was rendering its decision. But we do know that it's very convenient now that they're wanting to pin this murder on Jeremiah Daniel, who has since passed away. He was shot and killed in January of 2018. But he did initially testify at trial that the defendant was the one that shot Smith. And that would be admissible because he is no longer— How does that come in? —alive. Well, he testified— He's not here, so he can't be cross-examined. I guess the— But he was— —was cross-examined, yes. Exactly. He was originally testified at trial and was cross-examined. And remember, in the original trial, some of the IDs that were made, there was no video of those identifications. Is that correct? No. And that the witnesses— That is correct. Okay. So that's why when you talk—when your argument is all about what happened at trial, I tend to focus on what was in front of this judge at the time with all of these recantations or I didn't see it. What it's going to look like on a retrial. Well, the only person that testified at the post-conviction hearing was the victim, Smith. But we have affidavits. Yes. You have the defendant's affidavit, Lucas' affidavit, and— Who was the third one? There were three. The defendant, Lucas, and Smith, he submitted affidavits from all three of them that are— Do you need a recitation of what those affidavits are? No. I'm just wondering, how does the post-conviction court dismiss those as not credible? That is exactly my question, Your Honor, and I think the court's decision was manifestly erroneous because it cannot be said that this newly discovered evidence would be of such a conclusive character that it would change the result on retrial. The post-conviction court completely disregarded all of the other IDs that were made at trial and focused only on the victim's testimony, who went back and forth. I see my time has expired. May I briefly thank you, Your Honor? It wasn't until the post-conviction hearing that Smith alleged that Daniel was the one who shot him, conveniently after Daniel has since passed away. So they're wanting to pin it on the guy who's no longer alive and can't defend himself, and then therefore everyone's out of jail, scot-free. And I, like Your Honor said, I don't understand why the court just completely disregarded all of those other prior identifications in rendering its decision in this case, because it doesn't make any sense. It wouldn't change the result on retrial. And the conclusive character prong of when a freestanding claim of actual innocence under the Post-Conviction Hearing Act, that is the hardest prong to meet. Courts rarely grant post-conviction petitions based on claims of actual innocence, as this standard is extraordinarily difficult. In this case, I just do not believe, the State does not believe, that the court should have made that decision, and it is for those reasons the State respectfully requests this Court to reverse post-conviction judges. I have a question, though. Didn't the post-conviction judge, though, judge the credibility of the victim? I mean, isn't she looking at that in relationship to the possible new trial? She's looking at his credibility. She did, and she found that the victim's testimony was credible, but it changed back and forth. He initially testified that his memory was shot. He couldn't remember. Things were fuzzy. He just told the police what they wanted to hear because he wanted to be left alone. Then all of a sudden, no, it was Daniil that shot him conveniently ten years later. It doesn't make any sense. And no reasonable juror would not convict based on that evidence. I read the testimony of the trial and of the post-conviction, and I will say it is limited testimony in both hearings. Right. So are we relying heavily on her judgment of credibility? The standard of review is whether or not the post-conviction court's order was manifestly erroneous. And in this case, I believe that the opposite conclusion is clearly evident. Thank you. Thank you. Okay, Mr. Whitman, welcome to the Fifth District. I don't know if we've met before or you've met any of these justices, but we're happy to have you. Thank you. Your Honor, may it please the Court? Mr. Whitman. Go ahead. My name is Edward Whitrigan with the Office of the State Appellate Defender. I'm with the Fourth District Office, and I represent the appellee, Mr. Avion Smith, on this appeal. Your Honor, it's actually the state here that is asking for an extraordinary remedy in that they're seeking the outright reversal of the circuit court's decision made after a contested evidentiary hearing under the manifest error standard, and that's a highly deferential standard of review. It requires the appellant to show on appeal here that the circuit court's judgment was plainly and indisputably wrong. The state does not meet that high threshold here. Under that standard, it was up to the circuit court to determine Jamil's credibility and the weight that a jury would likely afford his new post-conviction testimony. Jamil was actually physically present before the circuit court, and so the court could listen to the tone of his testimony. It could scrutinize his demeanor and how he appeared before it, and there's no basis on the record that we have to find that the court's decision to credit Jamil's testimony and find it persuasive in the light of the trial evidence was error, In fact, if we just look at Jamil's post-conviction testimony, it was reasonable under the circumstances. He provided a legitimate reason why he was not able to identify his shooter in the aftermath of the shooting. As the state recognizes, he suffered substantial injuries following the shooting, a coma, lengthy hospitalization. He had multiple surgeries. He was in two strokes, importantly, here, which resulted in a persisting memory loss and brain fog that lasted for many months. And so given those injuries, it's not manifest error to believe his post-conviction testimony that his memory was impacted during this process of identifying Smith and during his trial testimony. And similarly, it's not also inherently and indisputably wrong to believe his post-conviction testimony that his memory is actually now clear as to the shooter's identity, that is, it being Jamil. Now, the state claims that his testimony that everything was fast and blurry is inconsistent with it being able to identify Jamil as a shooter, but that's wrong. By everyone's accounts here, the shooting was very unexpected, and it did happen fast. And so that's not inconsistent with the evidence that was presented at trial. And Jamil's post-conviction testimony about everything being in a blur, if we understand it in its proper context, it related to this period after the shooting where he was really struggling with his memory and not of the shooting itself. And so, again, just under the record that we have here, Jamil's memory, it's not indisputably wrong to believe Jamil when he testified that his memory of the shooter solely returned after the trial. As for the motivations for his trial testimony, Jamil explained that it was during this period where his memory was foggy that the police made him lean on Smith. This testimony is corroborated, well, first of all, it's credited by the post-conviction hearing or the post-conviction court, but it was also corroborated by Lucas's trial testimony where he talked about how the police were pressuring him into identifying Smith as a shooter. And there's no objective evidence here of the identifications. The police acknowledged that they had the capability at the public safety building of recording these interviews, but they simply did not do so for any of them, including Jamil's, so we don't have any objective evidence that could contradict his post-conviction testimony that he was being pressured into identifying Smith as a shooter. But doesn't the evidence in a newly discovered claim, I mean, there were other claims in this post-conviction petition that were denied, right? Yes, Your Honor. The ineffective assistance of counsel was denied. Yes, Your Honor. But in an actual innocence claim, doesn't the evidence have to be newly discovered? Yes, Your Honor. So how did they meet that burden if everybody was there? Yeah. And so Circo did make that finding that this was newly discovered, and it did on the basis of But they didn't say why. Well, I believe that the basis would be Jamil's post-conviction testimony, which it found credible that he was having this memory, I believe he described it as a fog, a memory fog during trial, so he would not be able to provide this testimony that Jamil was the shooter during trial. It was only after that, when his memory returned, that he could identify Smith, or not Smith, excuse me, identify Jamil as the shooter. Can you hear me? Okay, we have a journey going on.  So, but my question is, in paragraph 25 of the order, the court says, the court imagines in this case a new trial in which the victim testifies that he was shot by Jeremiah DeNeal and not Adion Smith. And what bothers me is, and I was trying to get to that with Ms. O'Brien, is the court is imagining a new trial and what it would look like, but I think the standard is whether or not there was newly discovered evidence in an actual innocence claim, not what the new trial might look like, so that the conviction, the result would be different. I think the burden is two parts, is what I'm saying. Oh, I'm so sorry. The first part is newly discovered evidence, and then the outcome would be different. Yes. But I don't think we get to the outcome would be different until we find there's newly discovered evidence. My question to you is, am I right or wrong about that? I think, well, the standard is that they have to meet all three aspects for the actual innocence claim, that it was newly discovered, that it was material, non-cumulative, and also the final point of it being conclusive in nature. And it is the defense who would bear that burden by preponderance of the evidence. I'm going to interrupt for just a moment, but if I'm not mistaken, the state has conceded that here. I'm curious, did they concede that in front of the post-conviction judge? I don't believe it was clearly conceded before the post-conviction hearing, but it is on appeal. They have clearly conceded that point, that it was newly discovered evidence. Okay. I'm just not sure the impact of that the trial court didn't have. I'm sorry, the post-conviction court. Go ahead. Okay. Of course. Well, I think for the post-conviction hearing court, not only did it find Jamil credible, it also looked at the other evidence that was presented at trial, and the other evidence that was presented at trial doesn't rebut Jamil's testimony here, that Jamil was the shooter. It's not a case where we have objective evidence that establishes that Smith is the shooter. We don't have any DNA or fingerprint evidence. We don't have any, the firearm was never recovered. We don't have any positive gunshot residue tests. There's no surveillance that could shed any light on what transpired at all here. So there's no piece of objective evidence that the court could rely on. Instead, it's wading through the credibility of all these witnesses. And even though there were other identifications, they were extremely flawed. If we take Jamil's identification first here, it was undermined by, in light of Jamil's post-conviction testimony, the allegation that he was the shooter, and so he would have motivation to blame anyone else for the shooting. And he also was stopped by a police officer shortly after leaving the scene and asked if he came from the area of the shooting, and he specifically did not identify Smith as the shooter at that time. It was only five days later, after the police had actually arrested Smith, after they had narrowed their focus on Smith, did they actually blame him, did Jamil actually blame him for the shooting? And then if we look at Johnson's identification, he was taken directly from the scene of the shooting to the public safety building where he denied that he saw the shooter. He denied that he saw a gun or that he could identify the shooter in any way, and it was only six days later, after he was actually given Smith's name and photographed by others, after Smith has actually been charged for the offense, and after Jamil has identified Smith as the shooter, did he actually make his identification? And I think it's also important here to understand, or Jamil's post-conviction testimony sheds new light on Johnson's explanation for that delay. He explained that he was, he explained at trial that he was afraid of someone, and that's why there was a delay in his identification. But he made it clear he was not afraid of Smith. He was afraid of someone that Smith hangs out with. Well, in light of Jamil's post-conviction testimony, I think that it's a reasonable inference that that would be Jamil, who is a close friend with Smith, and they were actually hanging out the day of the shooting. And then also looking at Johnson's trial testimony, I think the court, the post-conviction court was right in finding it confusing because he actually denied that he ever saw Smith with a firearm, and that's inconsistent with, I mean, being able to observe the shooting in the first place. Briefly on Lucas' identification, I don't think this was admissible as impeachment evidence or as substantive evidence, and I see that I'm out of time, and I can rely on my points in the briefing for that point unless there are any questions. Okay. Thank you. We appreciate you coming so far. Ms. Sussman O'Brien, I have a question for you before you start. Yes, ma'am. As Justice Schiller pointed out, the State concedes this was newly discovered evidence. Yes. So if it's newly discovered evidence, and obviously this is a material change, how does the State come here and argue that there wouldn't have been a different outcome? I mean, if you concede the first that it's newly discovered, isn't the appeal over? No, Your Honor. That third prong in an actual innocence claim is very, very hard to overcome. It's an extraordinarily difficult prong to overcome, and in this case, as Justice Schiller pointed out, the limited testimony at the post-conviction hearing was just that of Smith's testimony, where he just said, oh, well, I can't remember. It was blurry, but my memory came back, and this, that, and the other, and it wasn't until that day at the post-conviction hearing that all of a sudden he magically remembers that Danielle was the one that shot him, who has conveniently passed away and no longer here to defend himself. I know, but the State relies heavily on Lucas' testimony, and that goes back to what I asked you before, is I don't know how Lucas' testimony, he's the one who signed the photo array. Picked him out of a photo array and told Detective, again, I'm going to mess up the name, DeMano. Yes, it's in the brief. Yes. But you can't call him and then impeach him. In other words, there's going to be a witness problem at trial as to his credibility. Yes, it can, and the post-conviction court did find that Lucas saw nothing and was unable to identify the shooter because he was too busy running away. However, Smith's testimony, back to the, like, that's all it had to rely on in ordering a whole new trial for this defendant. And what's bizarre to me is that he said, yes, my memory was blurry, it happened so fast, things are foggy, but the opposite is also true. If Smith was not able to recount what happened the night of the shooting, then he cannot also state that the defendant was not the shooter. So the fact that the post-conviction court solely relies on the victim, who can't remember much of his testimony, to give this defendant an entire new trial and completely disregards every other eyewitness account at the original trial, it doesn't make any sense and it definitely doesn't overcome that third prong of such a conclusive character element that the new evidence is the most important element of the actual innocence claim in the Post-Conviction Hearing Act. It has to be such of a conclusive character that it would change the result on retrial, meaning no reasonable juror would convict based on the evidence. And that's just not what happened in this case. And it is for these reasons the state respectfully requests for this court to reverse the post-conviction court's order and reinstate the defendant's conviction in sentences, unless your honors have any questions. I still haven't stuck on Lucas, because we have an affidavit on him. Mm-hmm. And that post-conviction... Yes. ...stage. His affidavit filed in 2017, it did not name Daniel as the shooter in the affidavit. It wasn't until the post-conviction hearing testimony where he all of a sudden, and mind you, 2017 is a year before Daniel passed away. Well, he waits until Daniel passes away to then allege that he was the shooter so that everyone gets off scot-free. It doesn't make any sense. For clarification for me, you concede that this is new evidence. Are you conceding that it's material and cumulative as well? I'm looking at the brief. Because you say here the information is not cumulative and there was no other evidence presented that Daniel shot the victim, and it's still not sufficient to undermine the conviction. I'm trying to understand that statement. So although it can't be cumulative because nobody else alleged someone else was the shooter in this case, so therefore it's not cumulative, it is new and non-cumulative, but because of the overwhelming other eyewitness testimony and other evidence that was presented at trial, it still isn't strong enough to overcome the fact that no jury would convict based on that new evidence. So the third problem. Yes. Just at that point. It ties into that. I mean, even though, yes, it's not, yes, to answer your basic question. Okay. Thank you. Any other questions? Okay. Thank you. Thank you. Thank you both for your arguments here today. This matter has been taken under advised contemplation in order in due course.